# EXHIBIT 1

Nicholas D. Kovarik, WSBA #35462
nick@pyklawyers.com
PISKEL YAHNE KOVARIK, PLLC
522 W. Riverside Ave. Ste. 700
Spokane, WA 99201
Telephone:   509.321.5930
Facsimile:    509. 321.5935

MICHAEL A. JOSEPHSON
mjosephson@mybackwages.com
ANDREW DUNLAP
adunlap@mybackwages.com
RICHARD M. SCHREIBER
rschreiber@mybackwages.com
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:   713.352.1100
Facsimile:    713.352-3300

*Attorneys for Plaintiffs Jerry Singletary, et al*

## U.S. DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERRY SINGLETARY, CHAD STEININGER, PHILLIP LYNCH, BRYCE BJORNVICK, ENRIQUE GASCA, GEORGE KYLE, Individually and For Others Similarly Situated.<br><br>              Plaintiffs,<br><br>       v.<br><br>AECOM, AMENTUM SERVICES, INC. and JOHN DOES 1 to 50.<br><br>              Defendants. | Case No.: Case No.: <u>4:18-cv-05187-SMJ</u><br><br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JERRY SINGLETARY, CHAD STEININGER, PHILLIP LYNCH, BRYCE BJORNVICK, ENRIQUE GASCA, GEORGE KYLE (PLAINTIFFS) informed and believes, and on that basis alleges, as follows:

### SUMMARY

1. AECOM (AECOM), Amentum Services, Inc. (AMENTUM) and John Does 1-50 (collectively, Defendants) directly and through its current and former wholly-owned subsidiaries, operated and controlled various divisions or business units which, upon information and belief, conducted business as Management Services ("MS"), Construction Services ("CS"), Design and Consulting Services ("DCS"), Energy Construction ("EC"), National Energy Technology Laboratory ("NETL"), Separation Process Research Unit ("SPRU"), Technical Services ("TS"), and Waste Treatment Plant ("WTP").

2. Through these divisions or business units, Defendants implemented, devised and carried out a compensation scheme which paid PLAINTIFFS and other workers like him straight time for overtime (STOT) instead of overtime as required by the FLSA, the IMWL, the California Labor Code, the PMWA, the NJWL, the NYLL, NMMWA and the WMWA.

3. As part of this compensation scheme, Defendants maintained a policy, practice and procedure of making regular partial day deductions from the daily and weekly pay of Plaintiff and those similarly situated workers. The use of these partial

day deductions was widespread, uniform and consistently applied across all the divisions and business units maintained, controlled and operated by Defendants.

4. PLAINTIFFS bring this collective and class action to recover unpaid overtime and other damages caused by Defendants conduct.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 a significant portion of the facts giving rise to this lawsuit occurred in this District.

## APPLICABLE STATE LAWS

8. The "California Wage Laws" refers to CAL. LAB. CODE §§ 201-204, 226, 226.7, 510, 512, 551-52, 1194 (2017) and applicable IWC Wage Orders; and the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*

9. The "Illinois Wage Laws" refers to the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* and supporting state wage and hour regulations (the "IMWL").

10.     The "New Jersey Wage Laws" refers to the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* and the supporting New Jersey Department of Labor and Workforce Development Regulations (the "NJWL").

11.     The "New Mexico Wage Laws" refers to the New Mexico Minimum Wage Act, (NMMWA) and NMSA § 50-4-22).

12.     The "New York Labor Laws" refers to the New York Labor Law that is codified in 12 N.Y.C.R.R. §142-2.2 and the corresponding statutory provisions.

13.     The "Pennsylvania Labor Law" refers to the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. §333.101 *et seq.* (the "PMWA").

14.     The "Washington Labor Laws" refers to Revised Code of Washington, Chapter 49.46 *et seq.* (RCW), Washington's Minimum Wage Act (WMWA), and any relevant regulations and/or rules adopted by the Washington Director of Labor and Industries (collectively, "Washington Wage Laws").

### THE PARTIES

15.     Defendants employed Plaintiffs and the proposed Putative Class Members.

16.     Plaintiff Jerry Singletary worked for Defendants in Washington.

17.     Plaintiff Chad Steininger worked for Defendants in New Mexico.

18.     Plaintiff Phillip Lynch worked for Defendants in New Jersey.

19.     Plaintiff Bryce Bjornvick worked for Defendants in New York and Pennsylvania.

20.     Plaintiff Enrique Gasca worked for Defendants in California.

21.     Plaintiff George Kyle worked for Defendants in Illinois.

22.     Defendant AECOM has already answered and appeared.

23.     Defendant AMENTUM purchased all or part of the business units and divisions described above and upon information and belief is liable in whole or in part for the damage caused by the STOT practices at issue.  AMENTUM can be served with process by serving its registered agent CT Corporation System, 711 Capitol Way S, Suite 204, Olympia, Washington 98501.

24.     Defendant John Does 1-50 are the wholly owned business units or subsidiaries which are owned, operated and controlled by AECOM or AMENTUM and are responsible for the damages caused STOT practices at issue.  Through discovery—which has been on hold, Plaintiff will identify the John Doe parties who need or should be added to this lawsuit.

25.     Singletary seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

26.     The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

**All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[1], who were, at**

---

[1]     Upon information and belief this includes, but is not limited to, Management Services ("MS"), Construction Services ("CS"), Design and Consulting Services ("DCS"), Energy Construction ("EC"), National Energy Technology Laboratory

any point from February 8, 2016 to the present, paid "straight time for overtime." (the "FLSA Class").

27.     Singletary also seeks certification of a class under Fed. R. Civ. P. 23 to remedy Defendants violations of the wage laws of California, Illinois, New Jersey, New Mexico, New York, Pennsylvania and Washington:

28.     The class of similarly situated employees sought to be certified as a class action for the purposes of pursuing their California Labor Code claims is defined as:

> **All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[2], who worked in the state of California and who were, at any point during the past 4 years and paid "straight time for overtime." (the "California Class").**

29.     The class of similarly situated employees sought to be certified as a class action for the purposes of pursuing their IMWL claims is defined as:

> **All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[3], who worked in the state of Illinois and who were, at any point during the past three years and paid "straight time for overtime." (the "Illinois Class").**

30.     The class of similarly situated employees sought to be certified as a class action for the purposes of pursuing their NJWL claims is defined as:

---

("NETL"), Separation Process Research Unit ("SPRU"), Technical Services ("TS"), and Waste Treatment Plant ("WTP").

[2]     *Id.*
[3]     *Id.*

All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[4], who worked in the state of New Jersey and who were, at any point during the past three years and paid "straight time for overtime." (the "New Jersey Class").

31. The class of similarly situated employees sought to be certified as a class action for the purposes of pursuing their NMMWA claims is defined as:

All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[5], who worked in the state of New Mexico and who were, at any point during the past three years and paid "straight time for overtime." (the "New Mexico Class").

32. The class of similarly situated employees sought to be certified as a class action for the purposes of pursuing their NYLL claims is defined as:

All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[6], who worked in the state of New York and who were, at any point during the past six years and paid "straight time for overtime." (the "New York Class").

33. The class of similarly situated employees sought to be certified as a class action for the purposes of pursuing their PMWA claims is defined as:

All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[7], who worked in the state of Pennsylvania and who were, at any point during the past three years and paid "straight time for overtime." (the "Pennsylvania Class").

---

[4]   *Id.*
[5]   *Id.*
[6]   *Id.*

34. The class of similarly situated employees sought to be certified as a class action for the purposes of pursuing their Washington Wage Laws claims is defined as:

> **All hourly employees of AECOM or AMENTUM, including any of their wholly owned business units or subsidiaries[8], who worked in the state of Washington and who were, at any point from February 8, 2016 to the present, paid "straight time for overtime." (the "Washington Class").**

35. Collectively, the FLSA Class Members and Class Members for each state represented are referred to as "Class Members."

### COVERAGE UNDER THE FLSA

36. At all times hereinafter mentioned, Defendants are and were employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37. At all times hereinafter mentioned, Defendants are and were enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

38. At all relevant times, Defendants are and were enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Defendants are engineering firms, providing design, consulting, construction and management services throughout this country using the services of PLAINTIFFS and the Class Members.

---

[7]  *Id.*
[8]  *Id.*

39.    At all relevant times, Defendants have and have had annual gross volume of sales substantially in excess of any statutory requirements.

40.    At all times hereinafter mentioned, PLAINTIFFS and the Class Members were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

## THE FACTS

41.    Defendants are engineering firms that provide design, consulting, construction, and management services to clients across the United States.

42.    In order to provide these services, Defendants employ individuals like Singletary.

43.    PLAINTIFFS were hourly employees who were employed by Defendants—either directly or through Defendants' wholly owned subsidiaries.

44.    If PLAINTIFFS worked fewer than 40 hours in a week, PLAINTIFFS were only paid only for the hours they worked.

45.    When PLAINTIFFS worked more than 40 hours in a week, he was paid the same hourly rate for all the hours that he worked.

46.    PLAINTIFFS were not guaranteed any wages.

47.    Alternatively, to the extent that Defendants claim that PLAINTIFFS were guaranteed wages, Defendants lost the privilege of such a guarantee by repeatedly making partial day deductions from PLAINTIFFS pay.

48.     The hours PLAINTIFFS worked and was paid for are reflected in Defendants' business records and human resources information systems.

49.     This practice of paying STOT and making partial day deductions is a payment scheme which violates the FLSA and analogous state wage and hour laws.

50.     The compensation practices that PLAINTIFFS were subjected to was not isolated or unique to PLAINTIFFS—their job titles or their supervisors.

51.     Upon information and belief thousands of workers were employed by Defendants during the relevant time period and were subjected to the same STOT and partial day deduction practices.

52.     Upon information and belief, Defendants have known that these illegal wage practices persisted and took no steps to correct them or otherwise change their practices.

### FLSA VIOLATIONS

53.     By failing to pay PLAINTIFFS and the FLSA Class Members overtime at one-and-one-half times their regular rates, Defendants violated the FLSA.

54.     Defendants owe PLAINTIFFS and the FLSA Class Members the difference between the rate actually paid and the proper overtime rate.

55.     Any differences in job duties, job titles or supervisors do not detract from the fact that these hourly workers are entitled to overtime pay or the fact that Defendants maintained a widespread and systematic practice of STOT and improper deductions.

56.     Defendants have known that their practices violated the FLSA for years and took no steps to comply with the overtime laws.

57.     Defendants knowledge and inaction shows and reflects a reckless disregard for whether, its pay practices violated the FLSA.

58.     Defendants are liable for the damages sustained during the entire statutory period as a result of willfully violating the law.

59.     Defendants failed to act in good faith and are liable to PLAINTIFFS and the Class Members an amount equal to all unpaid overtime wages as liquidated damages.

60.     PLAINTIFFS and the Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

61.     The Class Members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CALIFORNIA LABOR CODE VIOLATIONS
### FIRST VIOLATION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW

62.     The California Labor Code requires that all employees, including Gasca and the California Class, receive 1.5 times their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders.

63.     Despite working over 8 hours a day as part of their normal and regular shift, Gasca and the California Class, did not receive the full overtime compensation

at a rate not less than 1.5 times their proper regular rates for all hours worked over eight in one day.

64.     The California Labor Code also requires that all employees, including Gasca and the California Class, receive two times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders.

65.     Although Gasca and the California Class, occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

66.     The California Labor Code requires that all employees, including Gasca and the California Class, receive two times the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders.

67.     Although Gasca and the California Class, regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

68.     This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Gasca and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

## SECOND VIOLATION— FAILURE TO PROVIDE
## COMPENSATION FOR MISSED MEAL AND REST PERIODS

69.     In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Gasca and the California Class had the right to take two uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10 minute rest period for every four hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders.

70.     Although the California Labor Code requires that all employees, including Gasca and the California Class, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Gasca and the California Class did not receive two meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Orders.

71.     As a pattern and practice, Defendants did not provide Gasca and the California Class with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

72.     Although the California Labor Code requires that all employees, including Gasca and the California Class, receive a 10-minute rest period for every four hours worked, Gasca and the California Class did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Orders.

73.     As a pattern and practice, Defendants did not provide Gasca and the California Class with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

74.     Gasca and the California Class are entitled to receive compensation, at their regular rate of pay, of one hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Orders.

75.     Defendants' policy failed to provide Gasca and the California Class with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Gasca and the California Class in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

### THIRD VIOLATION— VIOLATIONS OF RECORD KEEPING REQUIREMENTS

76.     California Labor Code section 226 requires Defendants to keep accurate records regarding the rates of pay for their California employees and provide that information to Gasca and the California Class with their wage payment.

77.     Because Defendants failed to pay Gasca and the California Class lawful wages, it did not maintain accurate records of Gasca and the California Class' daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Gasca and the California Class with their wages.

78.    This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Gasca and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

### FOURTH VIOLATION— WAITING TIME PENALTIES

79.    At all relevant times, Defendants were required to pay Gasca and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

80.    As a result of Defendants' alleged California Labor Code violations, Defendants regularly failed to pay Gasca and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Defendants owe waiting time penalties pursuant to California Labor Code section 203.

81.    The conduct of Defendants was in violation of Gasca and the California Class' rights, was willful and was undertaken by the agents, employees, and managers of Defendants.

82.    Defendants willful failure to provide Gasca and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

83.    Therefore, Gasca and the California Class who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

## FIFTH VIOLATION— VIOLATION OF UNFAIR COMPETITION LAW

84.    Defendants have engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; (4) accurate wage statements; and (5) waiting time penalties.

85.    As a result of Defendants' failure to comply with federal and state law, Defendants have also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

86.    The relevant acts by Defendants occurred within the four years preceding the filing of this action.

87.    On information and belief, Defendants have engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Gasca and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

88.    Gasca and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

89.     Gasca and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct referred to above.

90.     Defendants are also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

### SIXTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA

91.     Gasca and the California Class are aggrieved employees within the meaning of California Labor Code section 2699.

*92.*     As aggrieved employees, Gasca and the California Class seek to recover of civil penalties against Defendants pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

93.     Defendants have knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

    a.    Failing to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Order 16-2001);
    b.    Failing to provide compensation for missed meal and rest periods (Cal. Lab. Code §§ 226.7, 512; IWC Wage Order 16-2001);
    c.    Violating record keeping requirements (CAL. LAB. CODE § 226);
    d.    Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);
    e.    Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

94.     The civil penalties sought by Gasca and the California Class include the recovery of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

95.     Gasca and the California Class seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Gasca and the California Class pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

96.     Gasca and the California Class will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

97.     Gasca and the California Class had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by Defendants.

98.     Gasca and the California Class have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA.

## IMWL VIOLATIONS

99.     Kyle brings this claim under the IMWL

100.    The conduct alleged violates the IMWL (820 ILCS 105/1 *et seq.*).

101.    At all relevant times, Defendants were subject to the requirements of the IMWL.

102.    At all relevant times, Defendants employed Kyle and the Illinois Class Members as an "employee" within the meaning of the IMWL.

103.    The IMWL requires employers like Defendants to pay employees at 1 and ½ times the regular rate of pay for hours worked in excess of forty hours in any one week. Kyle and the Illinois Class Members are entitled to overtime pay under the IMWL.

104.    Kyle and the Illinois Class Members are entitled to recover their unpaid overtime compensation, treble damages, interest, attorney's fees, costs, and expenses of this action from Defendants as provided by the IMWL. 820 ILCS 105/12.

### NEW JERSEY VIOLATIONS

105.    The conduct alleged in this Complaint by Lynch violates the New Jersey Wage Laws.

106.    At all relevant times, Defendants were employers under the New Jersey Wage Laws.

107.    At all relevant times, Defendants employed Lynch and each member of the New Jersey Class within the meaning of the New Jersey Wage Laws.

108.    The overtime wage provisions of the N.J.S.A. § 34:11-56a, *et seq.* and the supporting New Jersey Department of Labor and Workforce Development Regulations apply to Defendants and protect Lynch and the New Jersey Class.

109.    Defendants failed to pay Lynch and the members of the New Jersey Class the overtime wages to which they are entitled under the N.J.S.A. § 34:11-56a, *et seq.* and the supporting New Jersey Department of Labor and Workforce

Development Regulations – at a rate of 1.5 times their regular rates – for all hours worked in excess of 40 per workweek.

110.    Due to Defendants' willful violations of the New Jersey Wage Laws, Lynch and the New Jersey Class Members are entitled to recover from Defendants unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### NMMWA VIOLATIONS

111.    Steininger brings this claim under the NMMWA as a class action.

112.    The conduct alleged violates the NMMWA (NMSA § 50-4-22).

113.    At all relevant times, Defendants were subject to the requirements of the NMMWA.

114.    The NMMWA requires employers like Defendants to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Steininger and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

115.    Defendants had a policy and practice of misclassifying Steininger and each member of the New Mexico class as exempt and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

116.    Steininger and each New Mexico Class Member seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40

hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

117.    Steininger and each New Mexico Class Member also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the NMMWA.

118.    The improper pay practices at issue were part of a continuing course of conduct, entitling Steininger and each New Mexico Class Member to recover for all such violations, regardless of the date they occurred.

## NEW YORK VIOLATIONS

119.    Bjornvick brings this claim under the NYLL as a class action.

120.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations, including, but not limited to 12 N.Y.C.R.R. § 142-2.2, apply to Defendants, and protect Bjornvick and the members of the New York Class.

121.    Defendants have failed to pay Bjornvick and the members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

122.    By Defendants' knowing or intentional failure to pay Bjornvick and the members of the New York Class overtime wages for hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. §§ 142-2.2, 142-2.9.

123.   Due to Defendants' violations of the NYLL, Bjornvick and the members of the New York Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, as provided for by NYLL Article 6 § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### PMWA VIOLATIONS

124.   Bjornvick brings this claim under the PMWA.

125.   The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

126.   At all relevant times, Defendants were subject to the requirements of the PMWA.

127.   At all relevant times, Defendants employed Bjornvick and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

128.   The PMWA requires employers like Defendants to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week.  Wolford and each member of the Pennsylvania class are entitled to overtime pay under the PMWA.

129.   Defendants had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

130.   Bjornvick and each member of the Pennsylvania class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in

excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

131. Bjornvick and each member of the Pennsylvania class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the PMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

132. Defendants illegal "straight time for overtime" policy extends beyond PLAINTIFFS.

133. It is the "straight time for overtime" payment plan that violates the FLSA in this collective and class action.

134. Defendants pay thousands of Class Members according to the same unlawful scheme.

135. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

136. PLAINTIFFS and the Class Members impacted by Defendants "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

137. Defendants have accurate records of the wages paid to its hourly workers.

138. The Class Members are geographically disbursed, residing, and working in states across the country.

139.   PLAINTIFFS' experiences are typical of the experiences of all Class Members.

140.   PLAINTIFFS interests are not contrary to, or in conflict with, the members of the Class Members. Like each member of the proposed classes, PLAINTIFFS have an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

141.   A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

142.   Absent this action, many members of the FLSA Class and the classes for violations of the IMWL, the California Labor Code, the PMWA, the NJWL, the NYLL, NMMWA and the WMWA will likely will not obtain redress of their injuries and Defendants will retain the proceeds of their violations of the FLSA and IMWL, the California Labor Code, the PMWA, the NJWL, the NYLL, NMMWA and the WMWA.

143.   Furthermore, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

144.   The questions of law and facts common to each of the Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a. Whether Defendants' employed the FLSA and Class Members within the meaning of the FLSA, the IMWL, the California Labor Code, the PMWA, the NJWL, the NYLL, NMMWA and the WMWA.

b. Whether the Class Members were exempt from overtime;

c. Whether Defendants' decision not to pay overtime to the Class Members was made in good faith; and

d. Whether Defendants violation of the FLSA, the IMWL, the California Labor Code, the PMWA, the NJWL, the NYLL, NMMWA and the WMWA was willful.

145. PLAINTIFFS' claims are typical of the Class Members since they have all sustained damages arising out of Defendants' illegal and uniform employment pay policy.

146. PLAINTIFFS know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

147. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

148. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

### JURY DEMAND

149. PLAINTIFFS demand a trial by jury.

### PRAYER

150. WHEREFORE, PLAINTIFFS pray for relief as follows:

a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the proposed Class Members to permit them to join this action by filing a written notice of consent;

b. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23 under the IMWL, the California Labor Code, the PMWA, the NJWL, the NYLL, NMMWA and the WMWA.

c. Judgment against Defendants awarding PLAINTIFFS and the Class Members all unpaid overtime compensation, liquidated damages, attorneys' fees and costs.

d. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

e. All such other and further relief to which PLAINTIFFS and the Class Members may show themselves to be justly entitled.

Respectfully submitted,

By: _/s/ Nicholas D. Kovarik_____

Nicholas D. Kovarik
WA Bar No. 35462
nick@pyklawyers.com
**PISKEL YAHNE KOVARIK, PLLC**
522 W. Riverside Ave., Suite 700
Spokane, Washington 99201
509-321-5930 – Telephone
509-321-5935 – Facsimile

Michael A. Josephson
Texas Bar No. 24014780
mjosephson@mybackwages.com
Andrew Dunlap
Texas Bar No. 24078444
adunlap@mybackwages.com
Richard M. Schreiber
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
Pro Hac Vice Forthcoming

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
rburch@brucknerburch.com
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
Pro Hac Vice Forthcoming

**ATTORNEYS FOR PLAINTIFFS**